IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

PAUL PYTLEWSKI,

        Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

17-cv-0810-slc

---

    Plaintiff Paul Pytlewski filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, respectively. 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636©. Pytlewski contends that the administrative law judge who denied his claim at the administrative level failed to properly evaluate the medical opinions regarding his mental limitations and failed to account in his residual functional capacity assessment and corresponding hypothetical for his moderate limitations in the area of concentration, persistence or pace. The commissioner disagrees.

    For the reasons stated below, I am affirming the commissioner's decision.


A. BACKGROUND

    Pytlewski applied for DIB and SSI benefits on June 25 and 26, 2015, alleging that he was disabled since May 9, 2015 from degenerative disc disease, spinal stenosis, pain in his back, neck and arms, anxiety and depression. Pytlewski was 38 years old when he applied for benefits. He had a high school education and had worked in the past as a janitor, mortgage clerk, automobile detailer and tire builder.

After the agency denied Pytlewski's claim initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"), which was held on October 28, 2016. After the hearing, the ALJ held the record open to allow Pytlewski to attend a consultative examination on December 15, 2016.

At the request of Pytlewski's counsel, the ALJ held a supplemental hearing on May 26, 2017 at which Pytlewski and a vocational expert testified. Pytlewski was represented by counsel at the hearing. On June 19, 2017, the ALJ issued a decision finding Pytlewski not disabled. The Appeals Council denied Pytlewski's request for review, making the hearing decision the final decision of the commissioner.

## B. RELEVANT MEDICAL EVIDENCE

At issue in this case are Pytlewski's mental impairments, particularly his ability to interact with others and to maintain concentration, persistence and pace. Critical to Pytlewski's appeal are the opinions of his treating psychiatrist, a consultative psychologist who examined him and the opinions of two state agency physicians. I synopsize them below:

### 1. Dr. Stephen Benish

At the request of the state disability agency, Pytlewski saw Stephen Benish, Ph.D., for a consultative examination on September 14, 2015. Dkt. 7, Administrative Record ("AR") at 590-595. Pytlewski reported having been diagnosed with bipolar disorder, depression, intermittent explosive disorder and anxiety for which he had been prescribed a variety of medications. He had recently moved from New York to Wisconsin and was living with his

2

girlfriend.  Pytlewski reported that he had lost several jobs because of conflicts with supervisors or coworkers.

Benish noted that "[t]he reliability and validity of [plaintiff's] claims is difficult to ascertain due to several factors." AR 586.  Among other things, Benish noted, Pytlewski brought his girlfriend to the exam and insisted that she be present during the evaluation, and she was "excessively talkative and circumstantial in speech." *Id*.  As for Pytlewski, he provided brief answers and took an excessive amount of time during formal testing, often requesting breaks and making statements such as "I just can't."  Benish noted that Pytlewski's "dramatic presentation made [it] difficult for the examiner to fully understand the symptomology." *Id*.

In spite of these caveats, Benish was able to draw some conclusions about Pytlewski's mental functioning.  Summarizing the results of the mental status exam, Benish noted that Pytlewski appeared to have good hygiene with unremarkable psychomotor behavior.  His speech, thought process, perceptions and thought content were normal; his orientation, concentration, attention, insight and judgment were intact; and his mood was anxious.  Pytlewski's cognitive persistence and most cognitive pace was adequate.  Benish saw no evidence to doubt Pytlewski's ability to complete most activities of daily living, but Benish was unable to assess his memory because of Pytlewski's unusual presentation during the testing.  Benish thought his behaviors might be evidence of malingering or a personality disorder.

Benish opined that Pytlewski had symptoms of bipolar disorder, posttraumatic stress disorder and panic and agoraphobic avoidance.  Assessing Pytlewski's work capacity, Benish noted that Pytlewski was able to understand, recall and carry out simple three-step instructions, had a moderately difficult but satisfactory ability to concentrate and pay attention, and had average cognitive pace.  Benish noted that Pytlewski's ability to respond appropriately to

3

supervisors or coworkers was "moderately affected" and that he responded to stress with angry outbursts and agitation toward others. AR 587.

2. <u>Susan Donahoo, Psy. D. and Russell Phillips, Ph.D.</u>

On September 23, 2015, state agency psychologist Susan Donahoo, Psy. D., reviewed Benish's examination findings in connection with her review of Pytlewski's applications for SSI and DIB. AR 141-43. Assessing the "B Criteria" of the listings for mental impairments, Donahoo found that Pytlewski had moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 152. Rating Pytlewski's functional abilities in each of these areas as part of her Mental Residual Functional Capacity Assessment, Donahoo found that Pytlewski was "moderately limited" in 9 of 17 work-related abilities, including his ability to maintain attention and concentration for extended periods and to interact appropriately with the public, supervisors and coworkers. AR 155-56. Translating these limitations into narrative, Donahoo wrote that Pytlewski was "capable of maintaining concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks" and "may at time[s] have some difficulty dealing appropriately w/the general public, supervisor's [*sic*] and coworkers." AR 156.

On January 22, 2016, another state agency consultant, Russell Phillips, Ph.D., reviewed the record on reconsideration and essentially agreed with Dr. Donahoo's conclusions, finding that despite his moderate mental limitations, Pytlewski was able to "persist at simple tasks over time under ordinary conditions." AR 176.

4

### 3. Dr. John Whelan

Pytlewski began treating with psychiatrist John Whelan, M.D. on July 26, 2016. At the initial intake evaluation, Dr. Whelan noted no abnormalities on mental status evaluation. Whelan diagnosed Pytlewski with a learning disability, bipolar disorder and depression, as well as somatization and a dependent personality disorder. AR 1251.

Dr. Whelan completed a residual functional capacity assessment form for Pytlewski on September 22, 2016. Whelan indicated that Pytlewski had a personality disorder with sociopathic and narcissistic traits and might also have a bipolar disorder. Dr. Whelan also observed "some malingering for benefits for SSI." AR 1257. Dr. Whelan indicated that Pytlewski was probably noncompliant with his depakote, remarking that he "apparently takes meds as he feels like it, if he feels like it." *Id*. Dr. Whelan indicated that Pytlewski had at most mild functional limitations as a result of his mental impairments, but might have difficulty working a regular job because of "temper attacks–doesn't like people." AR 1260. In a corresponding letter, Dr. Whelan indicated that Pytlewski would be able to work in a competitive setting if he adhered to a treatment plan. AR 1255-56.

In notes from a follow up visit on October 4, 2016, Dr. Whelan indicated that Pytlewski only wanted tramadol or clonazepam for his anxiety and said other medications caused unwanted side effects. Dr. Whelan noted no abnormalities on mental status exam and questioned whether Pytlewski might be engaging in drug-seeking behavior. AR 1312. Just one month later, however, on November 3, 2016, Dr. Whelan completed a mental residual functional capacity assessment of Pytlewski on which he found him severely disabled. AR 1278–1280. Dr. Whelan found that Pytlewski had "extreme" restrictions in his activities of

daily living, social functioning and ability to maintain concentration, persistence or pace, and that he had had four or more episodes of decompensation within a 12-month period. Dr. Whelan indicated that Pytlewski had bipolar disorder with post traumatic stress disorder "from family & job losses (30 jobs in 4 years)" and was completely unable to work or function independently outside his home.

Dr. Whelan saw Pytlewski for a 30 minute visit on March 22, 2017. On objective evaluation, he noted no mental abnormalities, and wrote that Pytlewski was "doing great." AR 1305.

## C. ADMINISTRATIVE PROCEEDINGS

At the administrative hearing, Pytlewski testified that as a result of his mental impairments, he gets mad often and has difficulty getting along with others. He said he had lost approximately 30 jobs, most of them because he "walked off the job" after arguing with his manager. AR 89. He also said he gets sad and depressed. AR 90.

On June 14, 2017, the ALJ issued a written decision, finding that Pytlewski was severely impaired by disorders of the back and neck, carpal tunnel syndrome, status post right release surgery, affective disorder, anxiety disorder and personality disorder. However, he concluded that none of Pytlewski's impairments, alone or in combination, met or medically equaled the criteria of any listed impairment. In reviewing the "B criteria" of the mental impairment listings, the ALJ found that Pytlewski had moderate limitations in social functioning and in concentration, persistence or pace, in accordance with the opinions of the state agency consultants.

6

The ALJ determined that Pytlewski retained the residual functional capacity to perform a limited range of sedentary work that was limited to simple, routine and repetitive tasks; no fast-paced work; only simple, work-related decisions; occasional workplace changes; and occasional interaction with the public, coworkers or supervisors. AR 20. (The ALJ also assessed some other physical limitations that are not relevant to Pytlewski's appeal.) In doing so, the ALJ gave "significant weight" to the opinions of the state agency psychological consultants, noting that their narrative descriptions of Pytlewski's residual functional capacity supported his finding and were supported by the medical evidence of record. In particular, the ALJ cited various medical records in which Pytlewski was observed to have good concentration, attention, and memory, normal language and intellectual function, and fair to good insight and judgment. AR 27 (citations omitted).

The ALJ found that Dr. Benish's consultative report was entitled to only "some weight" because it was "clouded by the possible factitious/malingering behaviors of the claimant[.]" AR 27. Even so, found the ALJ, Dr. Benish's assessment was generally consistent with the ALJ's own conclusions regarding Pytlewski's ability to work in certain settings. The ALJ explained that, insofar as Dr. Benish had concerns about Pytlewski's ability to interact with others and respond to stress, the ALJ had accounted for those limitations by finding that Pytlewski was limited to only occasional interaction with the public, coworkers and supervisors and only simple decisions and occasional changes. AR 28.

The ALJ afforded "limited weight" to Dr. Whelan's September 2016 opinion and "little weight" to his November 2016 opinion. With respect to the November 2016 opinion, the ALJ explained that Dr. Whelan had not explained why he had reversed his prior opinion and appeared to have based it largely on Pytlewski's subjective reports of his back pain, which was

7

outside Dr. Whelan's area of expertise. The ALJ further observed that Dr. Whelan's opinion that Pytlewski was totally impaired from functioning outside his home was inconsistent with Dr. Whelan's own contemporaneous treatment notes as well as other evidence in the record, including Pytlewski's largely normal mental status examinations, lack of hospitalizations or similarly structured treatment and ability to tend to his basic daily activities.

Relying on the testimony of a vocational expert who testified in response to a hypothetical question that accounted for Pytlewski's age, education, work history and limitations, the ALJ found that Pytlewski could not perform his past relevant work but could perform jobs that exist in significant numbers in the national economy, including addressing clerk, telephone quotation clerk, charge account clerk and inspector film touch-up. The administrative law judge did not otherwise discuss Pytlewski's mental health with the vocational expert.

OPINION

In this appeal, Pytlewski challenges only the ALJ's assessment of his mental limitations. He argues that the ALJ's analysis of his mental limitations was flawed because the ALJ did not properly weigh the medical opinions and failed to account for the consulting physicians' conclusion that he had moderate limitations in the area of concentration, persistence or pace.

A. MEDICAL OPINIONS

1. Dr. Benish

Pytlewski argues that the ALJ "failed to adequately address" Dr. Benish's finding that Pytlewski "responded to stress with angry outbursts at others and agitation." First, he challenges

the ALJ's conclusion that Dr. Benish's findings were unreliable because Pytlewski appeared to be malingering, arguing that it is just as likely that his behaviors during the examination were a product of his diagnosed personality disorder. As discussed previously, however, the ALJ did not reject Dr. Benish's opinion wholesale on the ground that Pytlewski was a malingerer. To the contrary, the ALJ accepted Dr. Benish's conclusion that Pytlewski was limited in his ability to interact with others and withstand work stress, and the ALJ accounted for those limitations in the residual functional capacity assessment. Specifically, the ALJ restricted Pytlewski to only occasional interaction with the public, coworkers and supervisors and jobs requiring only simple decisions and limited changes.

Substantial evidence in the record supports the ALJ's conclusion that Pytlewski is capable of performing such work in spite of his mental limitations. As the ALJ noted, by and large, Pytlewski's mental status examinations were normal, save for an anxious or depressed mood at times. The ALJ documented these reports in his decision, noting various dates on which Pytlewski was noted to exhibit normal language and intellectual function, presented with appropriate dress, displayed cooperative and friendly behavior, and had appropriate concentration and attention. AR 24-25. The ALJ further noted that a consultative examiner, Dr. Ward Jankus, reported that Pytlewski was pleasant with "a bit" of a restricted affect, describing him as a "mild mannered individual" who had no difficulty following directions or instructions, other than asking Dr. Jankus to speak more slowly. *Id*. In addition, after reviewing Dr. Benish's report as well as the other evidence of record, the state agency consultants opined that although Pytlewski would have "some" difficulty working with others, he nonetheless was capable of substantial gainful employment. The ALJ noted that Pytlewski's ability to sustain

9

occasional interaction with others was "shown by his ability to interact appropriately with treating and examining providers and engage in activities that take him out into public," such as shopping in stores and using public transportation. AR 19, 27.

Pytlewski does not suggest that any of these findings were inaccurate or rested on a misunderstanding of the record. Instead, he argues that the evidence cited by the ALJ is simply not enough to show that he can interact with supervisors, the public or coworkers "occasionally," which theoretically means up to one-third of the day. As evidence that he cannot do so, he points to his own testimony, in which he stated that he had walked off numerous jobs because of angry outbursts with managers and that he suffers from anxiety that precludes him from working with others.

However, the ALJ was required to accept Pytlewski's testimony only to the extent that it was supported by the other evidence in the record. *See* Soc. Sec. Ruling 16-3p ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."). As the ALJ explained, Pytlewski's testimony and alleged severe mental limitations were inconsistent with the medical record, which showed no "significant, ongoing emotional or cognitive abnormalities on examination," had not resulted in recent structured mental health treatment, and were of questionable reliability given that some treating providers and examining sources had expressed concern that Pytlewski was malingering in order to obtain disability benefits. AR 22. In addition, as the ALJ noted, Pytlewski's doctors described him as friendly and cooperative and he was able to shop in stores and take public transportation.

Keeping in mind the deference owed by this court to the ALJ, I am satisfied that the ALJ's determination that Pytlewski could tolerate "occasional" interactions with others reflects a reasonable resolution of the discrepancy between Pytlewski's self-description of his limitations and the medical evidence and other evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner.")

In sum, I find no error in the ALJ assessed and used Dr. Benish's opinion.

## B. Dr. John Whelan

As noted above, Pytlewski's treating psychiatrist, Dr. John Whelan, offered back-to-back diametric assessments of Pytlewski's mental residual functional capacity. In September 2016, he opined that Pytlewski had at most mild functional limitations and could maintain a full time job if he adhered to treatment. Two months later he reversed course and concluded that Pytlewski had "extreme" functional limitations that precluded all social and occupational functioning. The ALJ afforded "little weight" to Dr. Whelan's November 2016 opinion for various reasons, including Dr. Whelan's failure to cite any evidence that would explain his about-face, the lack of objective evidence to support his findings, the opinion's inconsistency with other evidence in the record, and the fact that Dr. Whelan appeared to factor in Pytlewski's back and neck impairment, which was outside the psychiatrist's area of expertise.

Under what is known colloquially as the "treating physician rule," a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]" 20 C.F.R. § 404.1527(c)(2).[1] Wisely, Pytlewski does not argue that Dr. Whelan's November 2016 opinion was entitled to controlling weight; as Pytlewski acknowledges, the fact that it contradicted the conclusions that Dr. Whelan had reached two months earlier is an inconsistency that precluded the ALJ from giving it controlling weight under the regulation. Instead, Pytlewski argues that in discounting Dr. Whelan's second opinion, the ALJ ignored intervening evidence that rendered Dr. Whelan's first opinion outdated. *See Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018) (remanding case to ALJ where ALJ relied on a "stale" mental-health analysis that failed to account for "significant and new developments" in claimant's mental health). Specifically, Pytlewski argues that Dr. Whelan's second assessment accounted for Pytlewski's physical difficulties and his history of spinal problems and treatment, problems of which Dr. Whelan was not aware when he first saw him.

Pytlewski may be correct that Dr. Whelan was accounting for his physical condition, but this does not help him. As ALJ noted, Dr. Whelan was treating Pytlewski for his mental condition, not his back condition. Not only did Dr. Whelan lack the expertise to offer an opinion about Pytlewski's work-related limitations from his back impairment, it was not even clear that Dr. Whelan had reviewed Pytlewski's medical records concerning that impairment. Instead, he appeared merely to have credited Pytlewski's subjective reports of pain and related

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). Because Pytlewski's application was filed before March 27, 2017, the treating physician rule applies. *See id*. § 404.1527.

12

limitations.  Under these circumstances, it was proper for the ALJ to give little weight to Dr. Whelan's opinion.  *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (treating doctor's opinion may be properly discounted if it is based upon the claimant's subjective complaints rather than objective medical evidence.); *see also* 20 C.F.R. § 404.1527(c)(5) (more weight generally given to medical opinion of a specialist "about medical issues related to his or her area of specialty").

Pytlewski also suggests that Dr. Whelan changed his opinion after receiving the results of lab work that showed that, contrary to Whelan's initial assessment, Pytlewski was compliant with his medications. Br. in Supp., dkt. 10, at 23-24 (citing AR 1271).  This is sheer speculation. Pytlewski cites no evidence showing that a copy of the lab report was sent to Dr. Whelan, that the report showed that Pytlewski was "compliant" with his medication regimen, or that Whelan relied on the lab report in formulating his November 2016 opinion.

Finally, Pytlewski argues that the ALJ erred in finding that Dr. Whelan's November 2016 opinion was inconsistent with other substantial evidence in the record.  According to Pytlewski, Whelan's restrictive opinion is supported by a March 2016 record of an office visit with Dr. Brendon Nacewicz, a doctor at the University of Wisconsin psychotherapy clinic, who prescribed depakote to address Pytlewski's reported "lifelong history of violence and anger violent outbursts." AR 802-03.  Dr. Nacewicz noted that there was a "high likelihood that the majority of [Pytlewski's] violence derives from antisocial personality disorder," and that depakote was unlikely to resolve it entirely. *Id*. Pytlewski appears to infer from the fact that Dr. Nacewicz prescribed depakote that his mental condition worsened in March 2016 and that the ALJ erred by contrasting Dr. Whelan's November 2016 opinion with Pytlewski's medical records that pre-dated March 2016.

This argument is unpersuasive. First, nothing in Dr. Nacewicz's March 2016 note nor the fact that he prescribed depakote proves that Pytlewski's condition worsened or that he cannot work. Second, although the ALJ did not discuss Pytlewski's March 2016 visit with Dr. Nacewicz, he did cite to Pytlewski's initial visit with Dr. Nacewicz in December 2015, when he was first seen for a psychiatric diagnostic evaluation. AR 25-26, 863-70. During that visit, Dr. Nacewicz observed that Pytlewski had admitted editing portions of his statements due to his concerns that they would affect his disability case and observed that he was "quite perseverative" with respect to his medical complaints. Dr. Nacewicz repeated this observation in his March 2016 note. AR 802-03. In his decision, the ALJ found that Dr. Nacewicz's remarks were similar to those made by Dr. Benish and Dr. Whelan, both of whom expressed concern that Pytlewski was fabricating or exaggerating his symptoms; the doctors' remarks "call[ed] into question the claimant's allegations regarding the nature and scope of his symptoms and limitations[.]" AR 25-26. Finally, although Pytlewski suggests that the March 2016 record shows that his limitations were severe, Dr. Whelan found otherwise when he saw Pytlewski just six months later, opining in September 2016 that his limitations were mostly mild and that he could work competitively if he adhered to treatment.

In sum, the ALJ cited logical reasons, supported by substantial evidence in the record, for questioning the reliability of Dr. Whelan's November 2016 opinion. Accordingly, he did not err in giving it little weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (ALJ "may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.") (internal quotations marks and citation omitted).

14

## C. State Agency Consultants

Pytlewski argues that the ALJ should not have given great weight to the opinions of the state agency physicians because neither of them reviewed Dr. Whelan's November 2016 opinion or the March 2016 note from the UW psychiatry clinic. I disagree. As just discussed, Dr. Whelan's November 2016 report was unreliable for the reasons discussed by the ALJ. And although neither Dr. Donahoo nor Dr. Phillips reviewed the March 2016 note from Dr. Nacewicz, Dr. Phillips did consider Nacewicz's December 2015 initial psych evaluation. Like the ALJ, Dr. Phillips noted that Pytlewski's admission to Nacewicz that he was "editing his story" to advance his disability case "raises reliability questions similar to those reported in the initial mental [consultative examination with Benish] and reduce[s] the credibility of the claimant's statements." AR 193. Contrary to Pytlewski's contention, Nacewicz's March 2016 report did not contain any new or material information that rendered Dr. Phillips's assessment outdated or incorrect. Thus, the ALJ did not err in crediting the opinions of the state agency consulting physicians.

## B. CONCENTRATION, PERSISTENCE AND PACE

Pytlewski argues that once the ALJ found that Pytlewski had "moderate" limitations in concentration, persistence or pace, the ALJ was required to incorporate that limitation into his hypothetical posed to the vocational expert. As Pytlewski points out, the Court of Appeals for the Seventh Circuit has made clear that an administrative law judge must orient the vocational expert to all of a claimant's limitations, including those in concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer

expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). Although the administrative law judge does not need to use the magic words "concentration, persistence or pace," the record must show that the vocational expert was aware of the claimant's particular limitations. *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014). The court of appeals has held that an ALJ must explicitly address the limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

Here, the parties agree that only the third exception is at issue. Pytlewski argues that this exception does not help the commissioner because the terms used by the ALJ –"simple, routine and repetitive tasks" and "no fast-paced work"—fail to account for Pytlewski's specific limitations in concentration, persistence or pace as identified by the state agency physicians in their mental RFCs. As Pytlewski points out, the Court of Appeals for the Seventh Circuit has criticized ALJs for including similar limitations in their RFC assessments and corresponding hypotheticals, on the ground that such restrictions merely describe unskilled work and fail to account for deficiencies in concentration, persistence or pace. *O'Connor-Spinner*, 627 F.3d at 620. *See also Moreno*, 882 F.3d at 730 (rejecting argument that ALJ's reference to simple work instructions and to routine, low-stress work reasonably accommodated Moreno's moderate difficulties in concentration, persistence or pace); *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir.

2015) (failure to define "fast paced production" was problematic); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) ("simple, routine tasks" did not account for limited ability to understand instructions); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration or mood swings).

At the same time, however, the court has held that when a medical expert translates the claimant's work-related limitations into a narrative residual functional capacity assessment, the ALJ does not error in relying on the narrative where it "adequately encapsulates and translates those worksheet observations." *Varga*, 794 F.3d at 816; *Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (ALJ may reasonably rely on psychologist's "bottom line-assessment" in narrative section of residual functional capacity assessment, at least where it is not inconsistent with checklist findings in other section of worksheet); *Milliken v. Astrue*, 397 Fed. Appx. 218, 221 (7th Cir. 2010) (ALJ entitled to rely on medical expert who "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment."); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (in formulating hypothetical for vocational expert, ALJ reasonably relied on physician's opinion that plaintiff could perform loss-stress, repetitive work).

As the commissioner points out, here the ALJ expressly cited to both the "checklist findings" and the narratives offered by the state agency physicians. AR 26-27. As the ALJ noted, Drs. Donahoo and Phillips opined in their narratives that Pytlewski was capable of maintaining the concentration and persistence necessary to complete workdays and workweeks in performance of simple repetitive tasks; to have "some" difficulty dealing appropriately with

17

the general public, supervisors and coworkers with evidence of irritability and anger outbursts; and to have no more than moderate problems with additional work place stressors or adapting to change within the workplace. The ALJ then went through each of the narrative findings and explained how he accounted for them in his RFC assessment. AR 27.

Pytlewski contends that the ALJ erred in relying on the narratives because they were inconsistent with the "moderate" limitations endorsed by the agency physicians on the MRFC checklist. In particular, argues Pytlewski, "[n]othing in the narrative or the ALJ's hypothetical question adequately addressed tardiness, absenteeism, work pace or the ability to complete a workday or workweek." Br. in Supp., dkt. 10, at 38. Pytlewski appears to demand a one-to-one correlation between all the limitations in the ALJ's RFC assessment and any "moderate" limitations identified by the medical examiner in the 19 work-related areas. That is not the rule in this circuit. In *Johansen*, for example, the court found that the ALJ did not err in relying on a state agency consultant's conclusion that the claimant could perform "repetitive, low-stress work" even though, as in this case, the consultant had found on the checklist that the claimant was "moderately limited" in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors. *Id.*, 314 F.3d at 285–86. Similarly, in *Capman*, 617 Fed. Appx. at 579, the court saw no inconsistency between the examiner's checklist finding that Capman was moderately limited in his ability to complete a day

18

or week of work without interruption and his narrative conclusion that Capman could adequately manage the stress of unskilled tasks.

As the Seventh Circuit has recognized, "[a] moderate limitation is not a complete impairment." *Capman*, 617 Fed. Appx. at 579 (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). *See also* SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017) (clarifying that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."). Moreover, "the RFC assessment is not an end in itself" but is a tool to help the ALJ assess what work-related activities the claimant can perform despite his limitations. *Milliken*, 397 Fed. Appx. at 222. Here, both state agency physicians concluded in their narrative findings that, in spite of Pytlewski's moderate limitations in various activities related to concentration, persistence and pace and social functioning, he could perform a "simple, repetitive job" but might have some difficulties dealing appropriately with others. These were essentially the same conclusions reached by Dr. Benish, the consultative examiner. The ALJ accommodated these restrictions by limiting Pytlewski to jobs requiring only simple, routine and repetitive tasks; no fast-paced work; only simple, work-related decisions; occasional workplace changes; and occasional interaction with the public, coworkers or supervisors. I am satisfied that this RFC adequately addressed the limitations identified as "moderate" by the state agency physicians and is supported by substantial evidence in the record. Accordingly, remand is not required.

ORDER

IT IS ORDERED THAT the decision of the Commissioner of Social Security denying Paul Pytlewski's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act is AFFIRMED. The clerk of court is directed to enter judgment for the defendant and close this case.

Entered this 2nd day of November, 2018.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge